Filed 1/13/22  In re J.A. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re J.A. et al., Persons Coming Under the Juvenile Court Law. | B310876 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.A.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. Nos. 20CCJP01948A, 20CCJP01948B |

APPEAL from orders of the Superior Court of Los Angeles County.  Lisa A. Brackelmanns, Judge Pro Tempore of the Juvenile Court.  Affirmed.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Stephanie Jo Reagan, Principal Deputy County Counsel, for Plaintiff and Respondent.

The juvenile court sustained a petition under section 300 of the Welfare and Institutions Code,[1] after finding father disciplined his daughter by striking her with a belt and pulling her ears.  Father argues there is insufficient evidence showing his discipline was inappropriate and posed a risk of harm to his children.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mother and father have two children together, J.A. (born in 2011) and E.A. (born in 2013).  Mother and father split up in 2016, and mother married another man, C.O.  Father did not have stable housing, so the children primarily lived with mother and C.O.  They would generally visit father twice a week for a few hours during the day.

On January 31, 2020, the Los Angeles County Department of Children and Family Services (DCFS) received a report that mother was involved in a domestic violence incident with C.O.  During DCFS's investigation of the incident, six-year-old E.A. said father pulls her ears and hits her with a belt when she is in trouble, but she denied that he leaves marks on her body.  She said father is nice to her and her brother, and she was not afraid of him.  According to E.A., mother uses time-outs or spankings as discipline.  Eight-year-old J.A. said father spanks him, but he felt safe with father and enjoyed visiting him.

Father told a social worker he used to spank his children or pat them on the back, but he denied that he ever left a mark or caused bruising.  Father said he would use other forms of discipline in the future.

On April 7, 2020, DCFS filed a petition to declare J.A. and E.A. dependents of the juvenile court.  The petition alleged

---

[1]     Future undesignated statutory references are to the Welfare and Institutions Code.

2

three counts related to father under section 300, subdivisions (a), (b), and (j) (counts a-1, b-1, and j-1).  All three counts alleged that father physically abused E.A. by striking her with a belt and pulling her ears, which placed her and J.A. at risk of serious physical harm.[2]

At the April 10, 2020 detention hearing, father urged the court to allow him to continue to have unmonitored visits with the children.  He pointed out that there had not been any recent physical abuse and the children felt safe with him.  The court removed the children from father's home and released them to mother on the condition that she not live with the stepfather.  The court ordered monitored visits for father.

A DCFS investigator interviewed the parents and children in June 2020.  E.A. told the investigator that father "was living with a girlfriend a couple of months ago and sometimes my brother and I would spend the night with them.  If my brother or I got in trouble our dad would pull our ears and hit us with a belt, usually on our bottom.  Sometimes my dad hitting me would leave red marks."  E.A. said she told mother that father would hit her, and mother spoke to father about it.  E.A., however, did not think it made a difference.  E.A. could not remember when father started hitting her and her brother.  She said the last time was "before Covid-19."

J.A. similarly disclosed that when he and his sister "got in trouble," father would pull their ears or hit them on their bottoms with a belt.  J.A. said this happened when they slept over at father's house.  Father, however, no longer had a house, so they only visited him during the day.  J.A. could not remember

---

[2]     The petition contained additional allegations regarding domestic violence and substance abuse by mother and C.O.  Father does not challenge those allegations.

the last time father hit him and E.A., other than that it was "before Covid-19."

Mother said she was aware father would sometimes pull the children's ears and "use the belt." She claimed he would only "tap" them with the belt as a scare tactic. Mother said it had been a while since father used the belt because the children had been primarily living with her.

Father said he used to pull the children's ears or hit them with a belt as a "last resort" after trying other methods of discipline, such as time-outs or taking away toys. He claimed the last time he used the belt was two years ago when J.A. tried to pull E.A. off the monkey bars by her feet. Father told J.A. to stop because it was not safe, but J.A. would not listen to him. Father said he no longer needed to discipline the children because they were better behaved and they only visited him for a couple hours at a time. He said if he needed to discipline them in the future, he could use time-outs.

Father enrolled in a "Parent in Partnership" program in June 2020. He was assigned a "parent in partner" named Glenda, who referred him to a "Father Strong" program. Father enrolled in the program in August 2020, but he did not actively participate in it. As of December 2020, father had not spoken to Glenda in months.

The court held a combined jurisdiction and disposition hearing on January 26 and 27, 2021. Father urged the court to dismiss the counts related to him because there was not a current risk of harm to the children. He argued the evidence showed the last time he physically struck the children was "before Covid," and the children said they enjoyed spending time with him and were not afraid of him. Father also pointed out that he had been participating in a "partnership program" and would enroll in other programs if ordered by the court.

DCFS urged the court to sustain the allegations related to father because his conduct amounted to physical abuse, especially in light of E.A.'s young age. The children's counsel similarly urged the court to sustain at least one of the counts related to father. Counsel pointed out that the petition was filed shortly after the COVID-19 lockdown began, and father had not taken any steps to ameliorate the problem since then.

The court sustained count b-1 and dismissed counts a-1 and j-1 as duplicative. The court found father physically abused E.A., which was traumatic for both children. It noted that although father enrolled in services, supervision was necessary to ensure he used proper discipline in the future. The court also sustained numerous counts related to mother.

As to disposition, the court declared the children dependents, removed them from father's custody, and placed them with mother. The court granted father monitored visitation and ordered he participate in a parenting course. The court said father's visits would become unmonitored after he completed three parenting classes.

Father timely appealed.

## DISCUSSION

Father contends there is insufficient evidence to support the juvenile court's jurisdictional findings as they relate to him.[3] He insists his use of corporal punishment was warranted and reasonable, and there is no evidence showing a risk of harm to the children as of the jurisdiction hearing.

---

[3] Although father does not challenge the jurisdictional findings related to mother, we exercise our discretion to consider his arguments because they concern jurisdictional findings that form the basis for dispositional orders that affect him. (See *In re A.R.* (2014) 228 Cal.App.4th 1146, 1150.)

5

" 'In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings . . . of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633 (*R.T.*).)

Under section 300, subdivision (b), the juvenile court may exercise jurisdiction over a child when the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" as a result of the failure of his or her parent to "adequately supervise or protect the child." (§ 300, subd. (b)(1).)

For purposes of section 300, " 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury." (§ 300, subd. (a); *In re D.M.* (2015) 242 Cal.App.4th 634, 640 (*D.M.*).) A parent, moreover, has the right to reasonably discipline his or her child and administer reasonable punishment. (*D.M.*, at pp. 640–641.) It is not necessarily unlawful for a parent to strike a child with an object other than a hand. (*Id.* at p. 642.)

"Whether a parent's use of discipline on a particular occasion falls within (or instead exceeds) the scope of this parental right to discipline turns on three considerations: (1) whether the parent's conduct is genuinely disciplinary; (2) whether the punishment is 'necess[ary]' (that is, whether the discipline was 'warranted by the circumstances'); and (3) 'whether the amount of punishment was reasonable or excessive.' [Citations.]" (*D.M.*, *supra*, 242 Cal.App.4th at p. 641.) A juvenile court may assert jurisdiction over a child when a parent's discipline exceeds these limits. (*Ibid.*)

6

We assume, without finding, father's use of physical discipline was genuinely disciplinary and warranted by the circumstances. Nevertheless, there is sufficient evidence from which the juvenile court could find it was excessive. To determine whether a parent's punishment was excessive, the court may consider " 'the age of the child, the part of the body that was struck, the instrument used to strike the child, and the amount of damage inflicted.' " (*Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72*,* 93.) Although not determinative, "the presence of lasting bruises or other marks may support a finding that a parent crossed the line between permissible discipline and . . . abuse." (*Id*. at p. 92.)

Here, each factor supports a finding that father's use of force was excessive. The record shows father regularly hit his children with a belt, which has the potential to cause serious physical harm. Father admitted using the belt as far back as 2018, when E.A. was around four years old. There is also evidence that father did not merely tap or pat E.A. with the belt, as he and mother suggested. E.A. said she would sometimes have red marks on her body after father hit her. She also said father "usually" hit her on her "bottom," from which it is reasonable to infer he also hit her on other parts of her body. In addition, E.A. suggested she reached out to mother for help, and mother then spoke to father, which indicates he used significantly more force than a typical spanking. Considered as a whole, there is sufficient evidence to support a finding that father's corporal discipline was excessive and posed a risk of serious physical injury to his children.

We acknowledge there is evidence from which the juvenile court could have found father's discipline was reasonable and appropriate. E.A., for example, initially said father did not leave marks on her. Both children also said they were not afraid of

father and enjoyed spending time with him. On appeal, however, we must view the evidence in the light most favorable to the court's determinations. (*In re R.T., supra*, 3 Cal.5th at p. 633.) While far from overwhelming, for the reasons discussed above, there is sufficient evidence in the record to support a finding that father's discipline was excessive.

Father points out there is no evidence showing his punishment left permanent marks or caused either child to suffer serious injuries. While true, a juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction." (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) Instead, under section 300, subdivision (b), there need only be a substantial risk of harm.

Father alternatively contends that, although his use of a belt may have been inappropriate, there is insufficient evidence showing the children were at risk of harm as of the jurisdiction hearing. He insists the only concrete example of him using a belt occurred in 2018, and there is no evidence showing he used corporal punishment after DCFS filed the petition.

Contrary to father's contentions, the record indicates he used corporal punishment more recently than 2018. E.A., for example, disclosed during a June 2020 interview that father hit her with a belt a "couple of months ago" when she spent the night at his house. J.A. similarly said father would hit him and E.A. with a belt when they slept over at his house. While it is true there is no evidence of father using corporal punishment while the dependency case was pending, that fact is not surprising given his visits with the children were monitored and limited to the daytime.

The record also indicates father failed to appreciate the risk his conduct posed to his children. Although father enrolled in a parenting program, he did not actively participate in it.

He also never expressly acknowledged his use of a belt was inappropriate. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].) Under these circumstances, the juvenile court could reasonably conclude there was a present risk to the children as of the jurisdiction hearing.

## DISPOSITION

We affirm the juvenile court's orders.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EGERTON, J.

We concur:

LAVIN, Acting P. J.

KNILL, J.[*]

---

[*] Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.